This was an action on the case for the abuse of valid illegal process. In support of his case the plaintiff introduced as a witness one Silas Walston, who testified that the defendant, who was a justice of the peace for the county of Greene, handed him a note in favor of one Samuel Moore against the present plaintiff, with instructions to collect it as soon as possible, saying that Moore had so ordered; that the witness, who was a constable in Greene County, went, some six or seven days after receiving the claim, to Eason's house on Sunday evening, and thence, the next morning between daylight and sunrise, to Jones' house, when he found him putting on his clothes. The witness said he went thus early lest Jones should be gone over to Edge combe County, where he was then working; that he told Jones his business and said he must go to trial that morning, and that, as Eason was the nearest magistrate, he must go there, to which Jones replied that he would not go to Eason's, because he and Eason were at variance; that Jones then got his gun and commenced rubbing it up, but upon the witness insisting that he must go, Jones finally agreed that he would go to Eason's gate; that they then went to Eason's gate, and Eason came out to them, and at the witness's request there tried the warrant; that upon the trial Eason read over the note, and read the amount nine dollars and some cents, when (332) Jones said it was only seven dollars and some cents; that Eason then asked Jones if he denied the note, to which Jones replied that he must prove it; when Eason said he need not deny it, for he knew his handwriting, and, therefore, gave judgment against him. The testimony as to what passed at the trial was objected to by the defendant upon the ground that he was not responsible in a civil action for what he did in his judicial capacity; but upon the plaintiff's saying that it was only offered for the purpose of showing the animus or intent by which the defendant was actuated throughout the whole transaction, it was admitted by the court for that purpose, and for that alone. This witness testified further that after the judgment was given he immediately took out a ca. sa., which was issued by Eason; that whether he did this from any suggestion of Eason then made or of his own accord he did not recollect, but Eason had formerly told him that a ca. sa., would have to be issued; that about the time the ca. sa., issued, Jones said that, if he were permitted, he could give security for the stay of execution, and named Amraff Beeman, who lived about a mile off, and who was *Page 235 
sufficient security, or that he could get the money from Mr. Webb, who lived 3 miles off in the county of Edge combe, if he were allowed to go there; that Jones then got one Willie Barnea to go off after security, and they waited until his return; that upon his coming back without security, the witness, Eason, and several other persons set off to carry Jones to Snow Hill (where the jail was), and after proceeding about a mile, they met Jones Beeman, whom Jones asked to be his security, to which Beeman replied by asking him whom he could get to stand with him, to which Jones said he did not know that he could get any person, and the witness did not hear Beeman offer to stand alone; that soon afterwards Eason started on, when the witness called to him and said, "Stop, 'squire; perhaps it can be accommodated," but he said it was not worth while to be bothered with it, as they had to go on anyhow. This witness stated further that he had another warrant against Jones, in favor of Eason, of which he had notified Jones, and that after they had the (333) interview with John Beeman, they proceeded on towards Snow Hill and stopped at the house of a Miss May, where Eason and Jones had a settlement of their own matters, and Eason paid the costs of his warrant, and then offered to be Jones' security for his appearance at court on the Moore debt, which Jones declined at first, but soon after called the witness to request Eason to become his security; that Eason said something about Jones' family being poor and in distressed circumstances, when Jones said they had a barrel of meal and 60 pounds of meat; upon which Eason said to the witness, go ahead, and they went and put him in jail. On his cross-examination the witness stated that while the party were at Eason's gate. Eason invited the whole company, including Jones, to take breakfast with him and likewise to drink with him, which Jones refused.
Willie Barnes testified that he was present at the trial of the warrant in favor of Moore, and that the note was not proved, though Jones required it; that after the ca. sa. was issued, Walston, the officer, asked Jones what he would do, to which Jones said he could do nothing unless he could be permitted to go and get security; that the witness went after Amraff Beeman, who, he said, would be his security, and went for that purpose, but the party had gone before he got there; that A. Beeman lived about a mile from Eason's and witness was gone about an hour; that Eason was not present when the witness started after A. Beeman. This witness testified further that three or four weeks before this transaction he heard one Asa Gay tell Eason that Jones had warranted him, when Eason said, if he had, he (Eason) would put him in jail.
John Beeman stated that when Jones asked him to be his surety, as testified by Walston, Eason said it was discretionary with him whether he would take surety. Jones said he could get any person, upon which *Page 236 
Eason said: "I'll be damned to h___l fire if any man living between heaven and h___l shall stand his surety." Witness then applied to Walston to know where the judgment was. This, he said, was done with the intention of becoming surety for Jones, though he did not distinctly tell the company he intended to do so. Walston said to Eason, "Stop; you know what you have to do today," upon which Eason repeated (334) that no man should stand. This witness had been at variance with Eason three or four years.
Jeremiah Beeman stated that he was the son of John Beeman; that he carried a letter from J. T. Eason to the defendant the Tuesday after the transaction spoken of by the other witness; that the defendant said if it had been presented to him the day before, he would have been bound to take the surety mentioned in it, but he did not think he was then bound; but that he would take the letter home, and if he found it according to law he would let his father know it; that Eason then said he saw that witness's father wanted to stand for Jones the day before, but he gave him to understand he did not want him to have anything to do with it; that he saw that J. T. Eason had influenced his father to take a part in it, to get some chance of the law on him, and said, further, that he had taken a part in it himself about the proof of the note.
William Webb testified that he lived 3 miles from Eason, in the county of Edgecombe, and that had he been applied to he would have paid Jones $5 which he owed him. This testimony was objected to, but received by the court.
For the defendant. Elkanah Bailey was examined, and testified that he was present at the trial of the warrant at Eason's gate; that Eason read the note as if it was nine dollars and some cents, when Jones said it was seven dollars; that Jones disputed the note, but Eason said he knew his handwriting, and, therefore, gave judgment; that Jones, after theca. sa, was taken out, said that if he could see William Webb, who lived 2 or 3 miles off in Edgecombe, he could give security, but Eason replied he should not release him to go after security; that Walston, the officer, said that if the men who were summoned would risk him, he might go after security; that Barnes went in search of security for him. This witness stated further that he was present when they met John Beeman, and heard Jones ask him to stand for him; but Beeman did not agree to do so; that he did not hear Eason, on that occasion, say that he would not take any person, though he was only 5 or 6 yards behind; that at May's, Jones and Eason settled their individual matter of dispute, (335) and then Eason offered to be his surety on the Moore Claim, to which Jones said if Moore had a mind to put him in jail he would pay him there; that after leaving May's, Jones asked Walston to request Eason to be his surety, when Eason said he was sorry for Jones' family, *Page 237 
to which Jones replied that he had meat, etc., and Eason thereupon told Walston to go on. This witness stated further that Eason furnished horses and carriages for the party to ride, but Jones refused to accept the accommodation, and that he heard nothing of the expressions attributed to Eason by John Beeman, though he was near enough to have heard them. Other witnesses were introduced by the plaintiff, who testified to very nearly the same facts as those stated by the witness Bailey, and, further, that Moore placed the note referred to in the hands of Eason to have it collected, and that Eason had no interest in it other than as agent.
The defendant's counsel objected that the action could not be sustained for anything done by the defendant in his official capacity as magistrate; that after Moore's claim was put into the officer's hands for collection, the defendant ceased to be Moore's agent, and had no right to control and did not control the process, and that the officer was solely responsible, if there was any abuse of the process, and that the case made out did not support the plaintiff's declaration.
The court instructed the jury that the plaintiff was not entitled to recover, and in this action did not seek to recover, damages for anything done by the defendant Eason while acting in his official capacity; but that, after Jones was arrested on a ca. sa., he was entitled to have a reasonable opportunity to discharge himself, either by paying the debt or procuring sureties for the stay of the execution or for his appearance at court to avail himself of the act for the relief of insolvent debtors, and that if Eason, acting as the agent of Moore, by his conduct deprived Jones, or prevailed upon the officer to deprive Jones of such reasonable opportunity to procure his release, either while at Eason's gate or afterwards when they met John Beeman, the plaintiff was entitled to recover in this action. The jury were instructed, further, that if, after the arrival of the party at May's, on their way to the jail, the defendant Eason offered in good faith to become Jones' surety, so as (336) thereby to procure his release, and Jones refused through obstinacy to accept the offer, he was not entitled to damages for his subsequent detention. The jury found a verdict for the plaintiff for $50 damages. A motion for a new trial having been made and refused, and judgment having been rendered according to the verdict, the defendant appealed.
The declaration states that the plaintiff was arrested on a ca. sa., issued on a judgment which one Moore had obtained against him; and that he, then being desirous to take the benefit of the act of the General Assembly for the relief of insolvent debtors, did offer and tender to *Page 238 
the constable who arrested him, Miles Beeman and John Beeman, as his sureties, to appear at the next county court of Greene to take the benefit of the said act; that the said sureties were good and sufficient; that the constable would have taken the said men as his sureties and released him from the arrest, but that the defendant, assuming to have the control of the said execution as the agent of Moore, did, by his undue and improper influence over the constable, maliciously cause and procure the said constable to reject and refuse to take the said sureties as then tendered, in consequence whereof he was put in jail on the said, ca. sa., and deprived of his liberty, to his great damage, etc.
The judge charged the jury that if the defendant, acting as the agent of Moore, by his conduct deprived the plaintiff, or prevailed on the officer to deprive him, of a reasonable opportunity to procure his release by giving security under the insolvent debtor's law, then the plaintiff was entitled to recover. The jury found a verdict for the plaintiff; there was judgment, and the defendant appealed.
On examining the case sent up to this Court, we do not find or discover that the plaintiff tendered to the constable either Miles Beeman, John Beeman, or any other persons, as his surety. John Beeman was asked to be a surety, but he never openly gave his assent to be a surety of (337) the plaintiff. It does not appear that the declaration made by the defendant, that no person should be taken as security for the plaintiff, had the effect either of deterring Beeman from tendering himself or the constable from receiving him had he been tendered. We must say that there was no evidence offered in this cause that either John Beeman. Miles Beeman, or any other person was tendered to the constable as surety for the plaintiff. There is no evidence that the defendant deterred any person from becoming surety, or prevailed on the officer to deprive the plaintiff of a reasonable opportunity to get surety. If, therefore, the declaration contain a sufficient cause of action, on which point we express no opinion, there must be a new trial, because there was no evidence to support its material allegations.
PER CURIAM. New trial.
(338)